Faye De Blanc Crasto v. Commissioner. Elizabeth G. Crasto Hoefeld et al. * v. Commissioner. Crasto v. Commissioner
Docket Nos. 46085, 46094.
United States Tax Court
T.C. Memo 1956-37; 1956 Tax Ct. Memo LEXIS 257; 15 T.C.M. (CCH) 166; T.C.M. (RIA) 56037; February 21, 1956
*257 Thomas A. Williams, Esq., Whitner Building, New Orleans, La., for the petitioners. Jackson L. Bailey, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings involve a deficiency of $12,068.52 in income tax for the calendar year 1949 determined against Faye De Blanc Crasto and Titus Lloyd Crasto, now deceased. The issue for decision is the deductibility of any amount claimed by Titus Lloyd Crasto as compensation paid to employees of his sole proprietorship in the form of stock in the corporate successor to that proprietorship. Findings of Fact Titus Lloyd Crasto, hereafter called Crasto, and Faye De Blanc Crasto, hereafter called petitioner, filed a joint income tax return for the calendar year 1949 with the collector of internal revenue for the district of Louisiana. Petitioner married Crasto on October 20, 1949. Crasto died intestate on June 24, 1952. Crasto, as sole proprietor, began operation of a glass and glazing business as Crasto Glass Company in October 1942. Petitioner was employed by Crasto on September 7, 1943. At that time she had no previous business experience. Her starting salary was $18 per *258 week. She was hired to do office work and to help out wherever she could. At that time Crasto had five employees consisting of three glaziers, a warehouseman and an office girl whom petitioner replaced. Crasto did all selling, purchasing, estimating, and went on some jobs and did glazing work. On October 1, 1945, J. Julius Steger, Jr., was hired as an estimator and draftsman. His starting salary was $50 per week plus 5 per cent of the profits. His duties were to examine plans for prospective buildings and list the quantities of glass and other related items and work up prices on jobs and submit estimates. If Crasto Glass Company made a successful bid, Steger would make working drawings to be used on the job. After being in the business about a year, he became manager of the contract department. Prior to this employment, he had worked for 25 years in the building industry with a millwork manufacturing concern. Richard P. Molenaar, Jr., was hired on July 7, 1947 when he was about 21 years old. His only prior experience was at part-time jobs. His salary was $40 per week and his duties when first employed were to answer the telephone, go to the bank and to do whatever else Crasto told *259 him to do. As each learned more about the business, petitioner, Steger and Molenaar became valued employees of Crasto. Crasto entered into separate written employment agreements with petitioner, Steger and Molenaar. The successive agreements between Crasto and petitioner, by dates, provided for a weekly salary plus a percentage of the net profits of the year's business as follows: Percentage
of Net
Date
Salary
Profits
January 2, 1945
$30.00
5%
January 1, 1946
30.00
5%
January 1, 1947
40.00
10%
January 1, 1948
60.00
10% Except for the one dated January 1, 1948, the agreements also provided for the payment of overtime at the rate of time and one-half. The similar agreements between Crasto and Steger were as follows: Percentage
of Net
Date
Salary
Profits
September 4, 1945
$50.00
5%
January 1, 1946
50.00
6%
January 1, 1947
55.00
10%
December 31, 1948
85.00
10% Except for the one dated December 31, 1948, the agreements also provided for the payment of overtime at the rate of time and one-half. The agreement between Crasto and Molenaar was dated December 31, 1948, and provided for a weekly salary of $50 *260 plus 5 per cent of the net profits of the year's business. The agreements were in substantially the following form (names and amounts being omitted): "This agreement is between Lloyd Crasto dba The Crasto Glass Company, hereinafter called the Employer and , hereinafter called the Employee. Employer agrees to pay the Employee the sum of per week. In addition employer agrees to give % of the net profits of the year's business to employee. Employee agrees to give his full time to the execution and promotion of the employer's business and is to have no business connections except those with the employer and is subject to call at any hour for service to the employer's business. (Signed) Employee (Signed) Lloyd Crasto Employer" In May 1949 Crasto went to Reno, Nevada, where, on July 21, 1949, he secured a divorce from his wife, Elizabeth. Petitioner was also in Nevada at the same time obtaining a divorce from her husband, Wagner. Sometime in 1948 Crasto had discussed with petitioner the incorporation of his business. About December 1948 he had discussed its incorporation with Molenaar, at which time Molenaar was informed that he would be given an opportunity to buy into the corporation. *261 Steger first learned that Crasto was thinking of incorporating the business through a telephone call in May 1949 from Crasto in Nevada. In June 1949 Steger was planning to leave Crasto's employ. Crasto wrote Steger a letter, dated June 3, 1949, urging Steger to stay on "a while longer than July 1st.," and admonishing Steger not to remove anything from Crasto's office if Steger decided to leave before that date. Attached to this letter was an agreement stating: "I the undersigned agree to give to J. Julius Steger 10% of the profits derived from the operation of The Crasto Glass Company during the period ending June 30th, 1949, however, as Steger has resigned, and as his resignation is cheerfully accepted by me, it is necessary that I make this provisor [provision] to collect the 10% mentioned above. It will be necessary for him to execute by personal attention to the best of his ability all Glazing Contracts entered into by The Crasto Glass Company; up to and including June 3rd., 1949. I think this to be entirely fair and equitable [equitable] as I am in no physical condition to carry on these contracts." This agreement was signed by Steger and Crasto. During preliminary *262 discussions concerning incorporation of the business Crasto suggested that Steger and Molenaar each be issued 24 per cent of the stock of the proposed corporation, with Crasto retaining 52 per cent. By June 7, 1949, however, Crasto had determined that petitioner, Steger and Molenaar should each get 15 per cent of the stock. Crasto, his lawyer in Nevada and petitioner held discussions in June concerning the proposed incorporation of the business and the issuance of stock to Crasto's employees. On June 15, 1949, Crasto caused his business to be incorporated under the laws of Nevada as Crasto Glass Company, Inc. On June 17, 1949, he transferred the net proprietorship assets to Crasto Glass Company, Inc., for and in consideration of 127,000 shares of the corporate capital stock. The value placed upon these net assets was $119,976.35. On June 17, 1949, Crasto directed the issuance to petitioner, Steger and Molenaar of 19,000 shares each of the 127,000 shares. The net profit of the Crasto Glasscompany from January 1, 1949 to June 17, 1949 was $53,917.70. The shares of these net profits to which Crasto's employees were entitled under their employment agreements were: petitioner, $5,391.77; *263 Steger, $5,391.77; Molenaar, $2,500. These bonuses totaling $13,283.54 were recorded on the books of the Crasto Glass Company, under date of June 17, 1949, as a debit to salaries and a credit to bonuses payable. This liability for bonuses payable was transferred to the books of the new corporation in an opening entry under date of June 17, 1949. When the stock was transferred to the three employees, this entry was scratched out with a pencil line and a like amount credited to Crasto's personal account on the corporate books. In order to acquire the same amount of stock as the other employees, Molenaar was required to give his note for the difference between the amount of the bonus due him ($2,500) and the amount due the other employees ($5,391.77). Molenaar subsequently paid the note in cash. No amount in excess of $13,283.54 was recorded on the books of either Crasto Glass Company or Crasto Glass Company, Inc., on June 17, 1949, on account either of bonuses payable or the transfers of stock to the three employees. The amount of $13,283.54 was deducted by Crasto and petitioner on their joint return for 1949 as compensation paid to employees. Respondent allowed the deduction. There *264 were no restrictions placed upon the use or sale of the stock received by petitioner, Steger and Molenaar, except that it had to be offered for sale first to the other stockholders in the event one wished to sell. Steger believed the stock would increase in value if proper efforts were put into the business. Molenaar was aware of no other bonus due him than that specified in his employment agreement with Crasto. The sales, gross profits and net profits of Crasto Glass Company were as follows for the periods indicated: Gross
Net
Year
Sales
Profits
Profits
10/14/42-12/31/42
$ 6,104.87
$ 4,544.15
$ 567.15
1943
51,745.38
31,178.30
15,739.18
1944
65,840.12
36,669.44
19,891.71
1945
109,517.85
53,606.73
36,606.41
1946
160,429.47
86,109.12
41,582.92
1947
248,168.37
127,947.41
64,885.79
1948
257,050.05
141,939.85
52,738.82
1/ 1/49- 6/ 6/49
132,679.17
54,604.94
43,141.59
In addition to the deduction of $13,283.54 on account of compensation paid to petitioner, Steger and Molenaar for 1949, Crasto and petitioner deducted $37,672.35 as "Stock bonus to employees" on their joint return filed for that year. Respondent disallowed this *265 deduction. This amount represents the estimated excess of the book value of the stock transferred to petitioner, Steger and Molenaar over their cash bonuses for 1949. In January 1950, Crasto, petitioner, Steger, Molenaar and an accountant discussed the preparation of individual income tax returns for 1949, and the accountant advised Steger and Molenaar that the stock should be reported in their 1949 returns. This was the first time that any suggestion had been made that the stock was compensation. Steger and Molenaar accepted the accountant's advice to report the alleged additional book value of the stock as compensation after the accountant told them that he had checked, in accordance with their suggestion, with Internal Revenue and was told that the proposed treatment was correct. After the returns were filed Steger and Molenaar each filed a claim for refund for the year 1949 for the tax paid on the portion of the book value of the shares of stock which allegedly exceeded the amount of their 1949 cash bonuses. Molenaar filed an income tax return for the calendar year 1949 reporting income as follows: Crasto Glass Co.
$ 3,689.20
Crasto Glass Co. (Stock Bonus)
12,557.45
Crasto Glass Co., Inc.
1,400.00
$17,646.65
*266 Steger filed an income tax return for the calendar year 1949 reporting income as follows: Crasto Glass Co.
$14,024.12
Crasto Glass Co., (Stock Bonus)
12,557.45
Crasto Glass Co., Inc.
2,380.00
$28,961.57 Crasto and petitioner in their joint income tax return for 1949 reported income as follows: Crasto Glass Company
$25,981.57
Crasto Glass Company, Inc.
5,060.00
Interest
93.86
Other
2,745.83
$33,881.26
The alleged excess book value of the shares of stock transferred to petitioner, Steger and Molenaar over the amount of their cash bonuses was not entered on the payroll records of the Crasto Glass Company as additional bonuses until January 1950. With respect to petitioner, only the figure $12,557.45 is noted at the bottom of such record, and with respect to Steger, there is only recorded the amount of $12,557.45 with a plus sign preceding it. Crasto Glass Company did not make any quarterly declaration of withholding tax on the value of any stock issued to petitioner, Steger and Molenaar. The salaries and cash bonuses received by petitioner, Steger and Molenaar from Crasto Glass Company from the beginning of their employment through *267 June 17, 1949, were as follows: Petitioner
Year
Salary
Bonus
Total
1943
$ 343.40 $
$ 343.40
1944
1,313.14
1,313.14
1945
1,837.40
2,018.83
3,856.23
1946
1,849.28
2,335.47
4,184.75
1947
2,405.00
8,110.73
10,515.73
1948
2,870.00
6,592.35
9,462.35
1/ 1/49- 6/17/49
660.00
5,391.77
6,051.77
Steger
10/ 4/45-12/31/45
$ 865.64
$ 504.71
$ 1,370.35
1946
4,154.96
2,802.57
6,957.53
1947
4,351.33
8,110.73
12,462.06
1948
4,408.71
6,592.35
11,001.06
1/ 1/49- 6/17/49
2,040.00
5,391.77
7,431.77
Molenaar
7/10/47-12/31/47
$ 980.93
$ 58.17
$ 1,039.10
1948
1,984.85
150.00
2,134.85
1/ 1/49- 6/17/49
1,189.20
2,500.00
3,689.20
A stock dividend was declared by Crasto Glass Company, Inc., on August 24, 1951. Petitioner, Steger and Molenaar each received 2,109 shares, bringing their total share holdings in Crasto Glass Company, Inc., to 21,109 shares each. In 1951 Steger and Molenaar had a disagreement with Crasto. Steger and Molenaar threatened to put the corporation into receivership. They received a telegram from Crasto telling them they were fired. The dispute culminated in the execution by Crasto, Steger *268 and Molenaar of the following agreement: "The undersigned agree that Messrs. Molenaar and Steger will sell and transfer their entire stock holdings in Crasto Glass Company, Inc. to either Titus Lloyd Crasto or the Corporation or both at the election of Mr. Crasto for the sum of twenty-five thousand cash each, payment to be made and the stock delivered on or before noon February 19th, 1952. "This is a walkout agreement and Messrs. Steger and Molenaar release the Corporation and Mr. Titus Lloyd Crasto from all claims of any nature and character including those for dividends, bonuses, salary, and stock ownership; and Mr. Titus Lloyd Crasto releases them and each of them from all claims which he may have against them, and agrees to assume and pay any obligations which they or either of them may have to the Corporation. * * *" Crasto and petitioner kept their books and filed their income tax returns on the cash receipts and disbursements basis of accounting. Crasto Glass Company, Inc., kept its books and filed its returns on the accrual basis of accounting. On October 20, 1952, petitioner and Crasto's former wife, Elizabeth, applied to the Louisiana Civil District Court for the *269 Parish of Orleans for appointment as co-administratrices of Crasto's estate. On October 21, 1952, that Court signed an order authorizing the publication of that application for letters of administration. On December 12, 1952, that Court signed a further order authorizing the applicants "to execute any and all petitions, affidavits, and other documents which may, in their discretion, or in the discretion of either of them, be necessary or proper in connection with a proposed income tax deficiency of Twelve Thousand Sixty-eight and 52/100 ($12,068.52) Dollars for the year 1949, assessed against 'Mr. Titus Lloyd Crasto and Mrs. Faye DeBlanc Crasto * * *'." Both petitioner and Crasto's former wife, Elizabeth, in their capacities as applicants for letters of administration, signed verifications to the petition filed on behalf of Crasto's estate in this proceeding. Opinion The sole question is the deductibility by petitioner and her deceased husband Crasto of the fair market value of corporate stock issued to certain employees and claimed by petitioner and Crasto as a deduction for services previously rendered. Crasto had for a number of years been conducting a glass business as a sole *270 proprietorship. In June of 1949, he transferred the business to a corporation and at the same time there was issued to three employees stock in the new corporation, claimed to be worth, in each case, $17,949.22. Of this, $5,391.77 was paid either by the application of a cash bonus due the employee or in cash. The balance, three times the $12,557.45 figure, or $37,672.35, was claimed by petitioner and Crasto to be deductible as compensation for personal services rendered to Crasto's sole proprietorship in prior years. It is the disallowance of this claimed deduction which creates the controversy. Although three employees were involved in the issuance of stock, each one was in a different situation. Petitioner, for example, was not merely an employee but the prospective wife of the owner of the business. A suggestion as to her of the lack of any business necessity would have some plausibility. Steger, on the other hand, having evidenced his disgruntlement by threats to resign, the motivation toward him could be either an effort to recapture his good will by more generous compensation for past services, or some assurance that for the future his own self-interest would keep him attached *271 to the prospective corporate enterprise. Molenaar, however, for all that appears was, in fact, what he was accepted as: a typical employee of some but not considerable experience, whose services were important and valuable but not necessarily indispensable. We regard his as the situation which will give the key to the purpose of the stock issuance. Molenaar was the only one who paid anything in cash for the stock and he was required to equalize the amount of his bonus with that of the other two employees. Again, Molenaar was but 24 years old and had been with the business only about 2 years. His past services had been retained by salary and bonuses for the whole time of something around $6,800. There was no threat on his part to leave. If the excess stock is regarded as additional compensation to him for those services at the value placed upon it by petitioner, the total would have trebled the amount of his salary and bonus for that time - a certainly questionable figure from the standpoint of reasonableness. [1] But if it be thought that he was just then getting to his valuable period, [2] as evidenced by the suggestion that he would take Steger's place if the latter left, then the *272 conception of a bargain purchase of the stock to secure his continued services for the future would be easily understandable. [3]
*273 Molenaar persisted in his assertion that he thought he was buying the stock although he recognized that it was more valuable than what he was paying. And the only inconsistent action on his part was in reporting the entire amount as compensation. But this was on advice given him by the accountant for petitioner and Crasto, who were at that very time seeking to deduct the same amounts as compensation paid. This action on their part is difficult to analyze. Petitioner and Crasto, together, reported income from the proprietorship of only some $29,000. They deducted $37,672 as compensation paid through issuance of the stock. This was a community return although petitioner and Crasto were not married when the stock was issued. It is not clear whether petitioner included the value of the stock in her own income, in which case it is hard to see how the payments to the employees were reasonable compared to the returns to Crasto, the original sole proprietor and ultimately principal stockholder of the business; [4] or whether petitioner failed to include it as income even though at the same time the other two employees were being advised that they must report its receipt. *274 Petitioner emphasizes the increase in profits shown by the history of the sole proprietorship. But due to the cash bonus arrangement the employees had already shared in those increased profits in prior years. And if it be suggested that Crasto intended, in part, to reward his employees for services, already rendered, part of the amount claimed as additional compensation was a not insubstantial amount of cash and consisted of a percentage of the profits for the period then being closed. This portion of the payment to each employee respondent has not disturbed. It is the only payment which we can regard as compensation for past services. The amount of the "stock bonus" paid to each employee on petitioner's theory was $12,557.45. The total net worth of the corporation at the time the stock was issued, according to petitioner's figures, was $119,976.35. The agreements for profit sharing which had been in effect under the sole proprietorship do not appear to have been renewed with the corporation. But, of course, the same result could be reached by issuing stock to the employees. Ten per cent of the stock would generally mean 10 per cent of the net profits. And 10 per cent of the stock *275 on the basis of petitioner's figures would have been $11,997.63, or within a few hundred dollars of the $12,557 that was actually considered the value of the stock. If, instead of the $119,000 figure, we adopt the $127,000 of stated par value upon incorporation, the 10 per cent figure becomes $12,700, or less than $150 more than the claimed value of the stock. It is said that an important consideration is how the transaction was treated from the standpoint of the employer. See, e.g., , certiorari denied . But the present record indicates that no entry was made on the employer's books indicating that the stock was additional compensation until many months later at a time when the accountant for petitioner and Crasto was preparing information for the income tax return. The contemporary entry indicated only that the compensation consisted of the employees' salaries and cash bonuses. We think the subsequent treatment was no more than a convenient afterthought. See . Having determined that the so-called stock bonuses were an inducement to the employees *276 to work in the future for an employer constituted of the new corporation just being formed, and that it was in no sense compensation for past services to Crasto individually, cf. , it follows that the deduction may not be taken by Crasto, the individual, since his business was not the business of the corporation. ; ; . The transaction was more nearly analagous to a bargain purchase for the purpose of interesting the employees in the future business of the corporation. See ; . We need not decide what would be the result if we had before us the prospective corporate employer on a claim of deduction. See, e.g., . The present issue is simpler and we say only that, as an inducement to the performance of future services by a different employer, the deduction by Crasto was not permissible. For the reasons stated, and on a consideration *277 of the entire record, we can reach only the conclusion that the so-called stock bonus was not compensation for services rendered to Crasto, nor, in fact, compensation for past services at all; but that it was a bargain purchase having its motivation in a desire to retain for a different employer the supposedly valuable future services of top employees of a new business entity. On that assumption deductibility must be denied, and respondent's action is approved. Decisions will be entered for the respondent. Footnotes
*. Guardian of Hope Elizabeth Crasto, Donald Lloyd Crasto, Pamela Rose Crasto and Jo Ann Crasto, Minors and Heirs at Law of Titus Lloyd Crasto and, Applicant for Letters of Administration Estate of Titus Lloyd Crasto and Faye De Blanc Crasto, Natural Tutrix of Titus Lloyd Crasto, Jr., Minor and Heir at Law of Titus Lloyd Crasto and, Applicant for Letters of Administration Estate of Titus Lloyd Crasto.↩
1. The difficulty of considering this reasonable compensation to Molenaar for past services appears from the following table taken from petitioner's brief: ↩
Mrs. Faye
J. Julius
Richard
Compensation Period
Crasto
Steger, Jr.
Molenaar
Aggregate weekly salaries and cash bonuses -
1943 through 1949
$36,507.37
$39,222.77
$ 6,863.15
Value of stock bonus June 17, 1949
12,557.45
12,557.45
12,557.45
Total compensation entire period
$49,064.82
$51,780.22
$19,420.60
2. Petitioner's brief refers to "his remarkable development as a business executive which Crasto recognized in 1949." ↩
3. The concept of self-interest and future services is in fact repeatedly suggested in petitioner's own argument: "* * * can it be doubted that the issuance of the stock to Steger and the others was to satisfy the discontent of his key employees, retain their services and stabilize the business of the new corporation * * * "* * * why should not Crasto issue to him [Steger] a stock bonus in the new corporation to retain his services. * * * "What Crasto did, if the Court please, was to pay Steger and Molenaar as well as Mrs. Crasto, by way of stock bonuses, an amount which he thought would retain their services for his business in the future." [Italics supplied.] Crasto "was actually benefited by the issuance of the stock to them as it should have been of sufficient incentive to them for Crasto to retain their services * * *" Steger's testimony quoted in petitioner's brief: Q. Are you contending you received that nineteen thousand shares of stock for just the cash bonus that was due you in 1949? A. That is right, sir. Q. And that is the only consideration you say you paid for it? A. That AND POSSIBLY SOME ASSURANCE TO MR. CRASTO THAT I WOULD CONTINUE TO WORK FOR THE CRASTO GLASS COMPANY. [Italics supplied in petitioner's brief.]↩
4. If petitioner reported the stock bonus as part of her income at the figures now suggested, her total income from Crasto Glass Company would have been: Salary
$ 660.00
Cash bonus
5,391.77
"Stock bonus"
12,557.45
Total
$18,609.22 Since the total receipts from the business shown by petitioner and Crasto, together, were $28,943.38 ($25,981.57 compensation, plus $2,961.81 profit), this would leave $10,334.16 to represent the total proceeds to the principal owner of the business - scarcely more than half of the $19,989.22 assertedly paid to Steger, and much less than that paid either petitioner or Molenaar.↩